IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |  |
|---|---|---|
| TIMOTHY AUSTIN, et al., | ) ) ) | Case No. 2:12-cv-00630-REB |
| Plaintiffs, | ) ) |  |
|  | ) | **ORDER ON MOTIONS** |
| v. | ) ) | **FOR SUMMARY JUDGMENT** |
| OREGON MUTUAL INS. CO., | ) ) |  |
| Defendant. | ) ) |  |

Pending before the Court are the parties' cross-motions for summary judgment. (Dkts. 20 & 27). Having carefully considered the record, participated in oral argument, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## BACKGROUND

This case arises from a family tragedy for Plaintiffs Timothy and Paula Austin (the "Austins"). Their son, Devon Austin ("Devon"), was killed in a car collision in September of 2010. Talbutt Aff., Ex. B (Dkt. 23). Ryan Reinhardt ("Reinhardt"), the driver of the vehicle in which Devon was riding, also was killed when his car collided with a vehicle driven by Kade Laughlin ("Laughlin"). Reinhardt's automobile was

**Order on Motions for Summary Judgment - 1**

insured through an insurance policy issued by Viking Insurance Company ("Viking"). Talbutt Aff., Ex. D (Dkt. 23). Viking settled the Austins' insurance claim, and paid its $50,000 policy limits, for Devon's injury/death. Laughlin's Farm Bureau policy similarly paid the Austins $25,000, an amount equal to its bodily injury liability limit.

There is no dispute that both the Laughlin and Reinhardt vehicles are considered "underinsured motor vehicles" as defined in the Austins' Oregon Mutual Insurance Policy. *See* Def.'s Mem., pp.2–3 (Dkt. 22); Talbutt Aff., Ex. A (Dkt. 23). Before making payment on the $100,000 limits of underinsured motorist coverage in the policy it had issued to the Austins, Defendant Oregon Mutual ("Oregon Mutual") subtracted two amounts paid from other sources: the $75,000 the Austins recovered under the Reinhardt and Laughlin policies, and the $5,000 Oregon Mutual previously paid to the Austins for medical expenses under the policy's medical payment coverage. As a result, Oregon Mutual paid $20,000 to the Austins under the underinsured motorist coverage in the policy. There appears to be no dispute that the Austin's damages exceed $100,000.

Oregon Mutual admits that the Austins' policy includes an endorsement for underinsured motorist coverage that was implicated by the accident involving Devon. But, Oregon Mutual contends that the $20,000 previously paid to the Austins is that total of any amount owed under the policy's $100,000 underinsured motorist coverage because the limits of such coverage were appropriately offset by the payments made to the Austins by the other insurance companies, and by Oregon Mutual's payment for $5,000 in

medical expenses. This lawsuit ensued because the Austins allege that Oregon Mutual owes them the full $100,000 UIM coverage limit, without offset, relying upon endorsement language in the policy providing that "any insurance we provide with respect to a vehicle you do not own is excess over any other collectible insurance." Compl., ¶ 4 (Dkt. 4-2). Plaintiffs sued for declaratory judgment against Oregon Mutual in Idaho state district court. Oregon Mutual then removed the case to this Court. (Dkt. 4-2).

The Austins describe the dispute as whether their Oregon Mutual policy coverage is excess to, or subject to an offset for, what they recovered from the drivers of the vehicles involved in the accident under those drivers' respective policies. Compl., ¶ 12. The Austins request an award of attorneys' fees and ask that the Court declare Oregon Mutual liable for the full limits of the underinsured motorist policy, *i.e.*, $100,000, without offset. *Id.* at p. 3. Oregon Mutual requests that the Court "confirm" that it is "only required" to pay the $20,000 amount already paid, as the remaining limits of its underinsured motorist coverage with the Austins after appropriate offsets. Answer, p. 5.

## DISCUSSION

**A.    Standards of Law**

    1.    <u>Summary Judgment: The Standard</u>

Summary judgment is used "to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but rather is "the principal tool[ ] by which factually insufficient

**Order on Motions for Summary Judgment - 3**

claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The standards generally applicable to motions for summary judgment do not change where the parties file cross motions. *See, e.g.*, *Cady v. Hartford Life & Accidental Ins. Co.*, 930 F.Supp.2d 1216, 2013 WL 1001073 (D.Idaho 2013); *Western Watersheds Project v. Bureau of Land Management*, 2010 WL 3735710 at * 3, n. 5 (D.Idaho 2010). However, "[e]ach motion must be considered on its own merits." *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (quoting William W. Schwarzer, et al., The Analysis and Decision of Summary Judgment Motions, 139 F.R.D. 441, 499 (Feb. 1992)). Further, the filing of cross-motions – where both parties argue there are no material factual disputes – does not eliminate the court's responsibility to determine whether disputes as to material fact are present. *Fair Housing Council of Riverside County*, 249 F.3d at 1136. Rather, the Court must independently search the record for factual disputes.

## 2. Interpreting Insurance Contracts

Insurance policies are contracts between the insurer and the insured. *See Mortensen v. Stewart Title Guar. Co.*, 235 P.3d 387, 392 (Idaho 2010) (citing *Hall v. Farmers Alliance Mut. Ins. Co.*, 179 P.3d 276, 280 (Idaho 2008)). Whether language in an insurance policy contract is ambiguous is a question of law. *See Armstrong v. Farmers Ins. Co. of Idaho*, 205 P.3d 1203, 1205 (Idaho 2009) (citing *Purvis v. Progressive Cas. Ins. Co.*, 127 P.3d 116, 119 (Idaho 2005)) (citation omitted). If the policy language is unambiguous, the court construes the policy as written, "and the [c]ourt by construction cannot create a liability not assumed by the insurer nor make a new contract for the parties, or one different from that plainly intended, nor add words to the contract of insurance to either create or avoid liability." *Id*. "Unless contrary intent is shown, common, non-technical words are given the meaning applied by laymen in daily usage – as opposed to the meaning derived from legal usage – in order to effectuate the intent of the parties." *Id*. (quoting *Howard v. Ore. Mut. Ins. Co.*, 46 P.3d 510, 513 (Idaho 2002)).

However, where there is an ambiguity in an insurance contract, special rules of construction apply to protect the insured. *See id*. at 1206 (citing *Hall*, 179 P.3d at 281). In determining whether there is ambiguity, the particular provision must be read within the context in which it occurs in the policy. *See Armstrong*, 205 P.3d at 1206 (citing *Purvis*, 127 P.3d at 119). An insurance policy provision is ambiguous if "it is reasonably

subject to conflicting interpretations." *North Pac. Ins. Co. v. Mai*, 939 P.2d 570, 572 (Idaho 1997). Insurance contracts are adhesion contracts, typically not subject to negotiation between the parties. Hence, any ambiguity that exists in the contract is construed most strongly against the insurer and in favor of the insured. *See Armstrong*, 205 P.3d at 1206 (citing *Arreguin v. Farmers Ins. Co.*, 180 P.3d 498, 500 (Idaho 2008)). Further, insurance contracts are to be construed to "provide full coverage for the indicated risks rather than to narrow its protection." *Smith v. O/P Transp.*, 918 P.2d 281, 284 (Idaho 1996). Sensibly then, "the burden is on the insurer to use clear and precise language if it wishes to restrict the scope of its coverage." *Arreguin*, 180 P.3d at 500. At the same time, standardized contract language must necessarily be somewhat general, in anticipation of varying sets of the facts. *See Axis Surplus Ins. Co. v. Lake CDA Dev.*, 2008 WL 4238966, *2 (D. Idaho 2008) (citing *Foster v. Johnstone*, 685 P.2d 802, 806 (Idaho 1984)).

**B.     The Relevant Policy Language is Unambiguous**

The dispute centers on the Oregon Mutual policy's "Underinsured Motorist" ("UIM") endorsement, which reads:

> **OTHER INSURANCE**
> If there is other similar insurance on a loss covered by this SECTION, we will pay our proportionate share as **our** limits of liability bear to the total limits of all applicable similar insurance. If this policy and any other policy affording similar insurance apply to the same accident, the maximum limits of liability under all the policies are the highest limits of liability under any one policy. But

> any insurance we provide with respect to a vehicle **you** do not own is excess over any other collectible insurance.

Talbutt Aff., Ex. A, pp. OR 00021 (Dkt. 23-1) (emphases in original).

The Austins argue that either the policy unambiguously provides for the full and unreduced $100,000 Oregon Mutual UIM policy limit—because the accident involved a vehicle not owned by the Austin's—or that the endorsement language is ambiguous. Pl.'s Mem., pp. 2, 4 (Dkt. 27-2). Oregon Mutual responds that the UIM provisions are not ambiguous when read as a whole, and points to this additional language in the UIM endorsement[1]:

> **Coverage D — Underinsured Motorist Coverage**
> We will pay **damages** for **bodily injury** which a **covered person** shall be legally entitled to recover from the owner or operator of an **underinsured motor vehicle**. The **bodily injury** must be sustained by a covered person and be caused by an auto accident arising out of the ownership, maintenance or use of the **underinsured motor vehicle**.
> **There is no coverage until the limits of liability of all bodily injury liability bonds and policies that apply have been used up by payment of judgments or settlements.**
> . . .
> **LIMITS OF LIABILITY**
> **Split Limit**
> The limit of liability shown in the Declarations for "each person" for Underinsured Motorists Coverage is **our** maximum limit of liability for all **damages** for **bodily injury** sustained by any one person in any one **auto accident**. . . . This is the most **we** will pay regardless of the number of **covered persons**, claims made, vehicles or premiums shown in the Declarations, vehicle involved in the **auto accident** or policies issued to **you** by **us**.

---

[1] Def.'s Mem., p. 4 (Dkt. 22).

**Order on Motions for Summary Judgment - 7**

> . . .
>
> Any amounts otherwise payable for **damages** under [the] SPLIT . . . LIMIT which the **covered person** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle** because of **bodily injury** caused by an **auto accident** shall be reduced by:
>
> 1. All sums paid because of the **bodily injury** by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under . . . Medical coverage endorsement . . . .
> . . .
> 4. The underinsured motor vehicle coverage shall be excess over and shall not pay again any medical expenses paid under the medical payments coverage.

Talbutt Aff., Ex. A, pp. OR 00020-00021 (Dkt. 23-1) (emphases in original).

The language relied upon by Oregon Mutual limits the amounts recoverable under the policy when recovery can also be had under policies issued to other legally responsible persons, for the claims arising from the accident. However, there is no explicit reference in such policy provisions as to whether these limitations apply in every circumstance or just some circumstances, such as when a covered person is involved in an accident in a vehicle that the covered person does not own. That latter circumstance, however, is referenced in the "Other Insurance" provision, relied upon by the Austins for their position that more is owed to them from Oregon Mutual. In particular, the Austins rely on the last sentence, which reads: "[B]ut any insurance we provide with respect to a vehicle **you** do not own is excess over any other collectible insurance."

There is an argument reasonably made to support the Austin's interpretation of the insurance policy, and the briefing submitted on their behalf puts the argument together as

**Order on Motions for Summary Judgment - 8**

well as can be done.[2] However, that reading of such language has not been adopted in Idaho law. Rather, Idaho law has given an interpretation to such language that supports Oregon Mutual's position in this lawsuit, *i.e.*, that there is no ambiguity in the policy and that the plain language of the policy permits the action taken by Oregon Mutual here. The fulcrum Idaho case on the issue considered closely analogous facts to this case, in which a plaintiff injured by an underinsured motorist received the full limit of the underinsured motorist's liability policy and then sought additional funds through her own

---

[2] Other jurisdictions, including an Oregon case involving an almost identical "Other Insurance" provision, have interpreted provisions similar to the one at issue here in the manner the Austins propose. For example, in *Country Mutual Ins. Co. v. White*, 157 P.3d 1212, 1216–17 (Or. App. 2007), the state court explained:
> [T]he antistacking (second) sentence of the "other insurance" provision of the policy does not contextually conform with the excess (third) sentence of that provision. The statute provides that the pertinent excess determination is made with reference to **1217 the combined liability limits of all "similar" other insurance coverage. Defendant's excess sentence, by contrast, which contains the provision's only reference to nonowned vehicles, refers to any other "collectible insurance," not similar insurance. Thus, it appears to be an independent excess provision; its only obvious connection with the second sentence is that they coexist in the same policy provision. In short, when read as a whole, the "other insurance" provision does not embody the antistacking provision that is authorized by the statute where an insured suffers bodily injury while occupying a nonowned vehicle.

There is sensible reasoning for such a result, and but for the holding in *Sublimity*, the Court might be persuaded that the words "any other" collectible insurance mean any other collectible insurance of any type, or at a minimum there is an ambiguity that should be resolved in favor of the insured. However, the holding in the *Sublimity* case is a nearly on-all-fours statement of Idaho law on the issue before this Court, and leaves no room for a different result here.

**Order on Motions for Summary Judgment - 9**

insurance policy's UIM coverage, *Sublimity v. Shaw*, 905 P.2d 640, 641 (Idaho 1995). The Idaho Supreme Court held that the term "similar insurance" in the first two sentences of the "Other Insurance" provision in that case "clearly means other UIM coverage" and that the term "any other collectible insurance" referred only to UIM insurance and not any type whatsoever of collectible insurance. *Id.* Even though the court found that the "Other Insurance" clause did not apply to the *Sublimity* case, it was because there was "no other UIM coverage" in that case. *Id.*

The Austins argue that *Sublimity* should not apply to this case because the plaintiff in that case was injured in her own car and not in a vehicle she did not own, which meant that the Idaho Supreme Court's decision went beyond what was needed to decide the case. The distinction is valid as to the facts of *Sublimity*, but the argument would read too much dicta into the holding of *Sublimity*. The *Sublimity* court was required to consider and interpret the "Other Insurance" provision of the insurance policy in order to decide the ultimate issues in the lawsuit—the fact the ultimate holding was that the "Other Insurance" provision did not form part of the coverage in that case does not change that the Idaho Supreme Court was required to rule upon its meaning in order to reach that result.

In this diversity case, this Court is constrained to follow Idaho state law in interpreting insurance contracts. The *Sublimity* case was decided by the Idaho Supreme

Court in a case involving an "Other Insurance" clause substantially similar[3] to the "Other Insurance" clause in this case. The Idaho Supreme Court found the provision unambiguous and ruled that the final sentence, referring to "any other collectible insurance" refers "only to situations where there is other UIM coverage". *Sublimity*, 905 P.2d at 641.

Additionally, construing the policy as a whole supports the reading of "all other collectible insurance" as limited to the particular endorsement or type of coverage at issue; here, UIM coverage. *See Armstrong*, 205 P.3d at 1206 (explaining that when determining whether a particular provision is ambiguous, the provision must be read in the context in which it occurs in the policy). Oregon Mutual's policy contains five "Other Insurance" provisions. These provisions contain similar statements to the UIM policy, *i.e.*, that insurance with respect to a vehicle you do not own is excess over any other collectible insurance. *See* Talbutt Aff., Ex. A, at pp. OR 00013, OR 00015, OR 00019,

---

[3] The "Other Insurance" clause in the policy before the *Sublimity* court had one fewer sentence than the similar clause in this case, and used a few additional phrases in the three similar sentences. Nonetheless, in all material respects, it was akin to Oregon Mutual's Other Insurance provision. In *Sublimity* the clause provided: "If there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance." 905 P.2d at 641. There is no substantive distinction between the Oregon Mutual policy's use of the word "however" and the *Sublimity* policy's use of the word "but" in the same manner, in an almost identical sentence.

**Order on Motions for Summary Judgment - 11**

OR 00023; *see also* Def.'s Reply, pp. 5–6 (Dkt. 29). Although each iteration of the statement is a little different, the intent—to limit excess coverage to situations in which the insurance is of the same type covered in that section of the policy or endorsement—is evident.

Here, unlike in *Sublimity*, there is other "similar" UIM insurance. Devon Austin was a person covered by Reinhardt's UIM coverage in the Viking policy and, thus, UIM coverage is *collectible* in this case, regardless of whether the Austins actually recovered damages from Viking under its third-party bodily injury liability coverage and not its UIM coverage.[4] *See* Talbutt Aff., Ex. D (Reinhardt policy); *see also* Def.'s Mem., p. 9 (Dkt. 22) (calculating the amount of UIM potentially available). The word "collectible", as used in the Oregon Mutual "Other Insurance" provision, does not appear to have a technical or specific meaning in the policy, and neither party has cited anything in the record or relevant case law indicating it has a special meaning in insurance contracts generally. Accordingly, the Court has considered the standard English dictionary definition of collectible, which is "due for present payment" or "payable".[5]

---

[4] The record is not clear on this matter even though the Austins settled with Reinhardt for an amount at the policy's limit for bodily injury coverage. Laughlin's UIM coverage does not apply to Devon Austin because he was not riding in Laughlin's car or otherwise a covered person as defined by Laughlin's policy. *See* Talbutt Aff., Ex. C., pp. OR 00052–53 (Laughlin's policy).

[5] *See State v. Herren*, No. 38783, 2012 WL 5464517, *3 (Idaho Ct. App. Nov. 9, 2012) (noting "words in statutes are to be construed in accordance with their normal

Merriam–Webster, online Dictionary, *available at* http://www.merriam-webster.com/dictionary/collectable?show=0&t=1395864899 (site last visited March 26, 2014). UIM coverage was available or payable to Devon Austin, as opposed to being paid or collected after the accident.

Accordingly, the final sentence of the Oregon Mutual "Other Insurance" provision applies to this case. That sentence states that "any insurance [Oregon Mutual] provide[s] with respect to a vehicle [the Austins] do not *own is excess over any other collectible insurance*." (Emphasis added). As noted before, Devon Austin was injured in a vehicle neither he nor his parents owned and the Reinhardt policy provides other similar, UIM, insurance. Following the reasoning of the *Sublimity* court that "collectible" insurance also has to be UIM insurance in the context the term is used in the applicable "Other Insurance" provision, the amount of collectible UIM insurance in this case from the Reinhardt policy is $25,000.[6] Thus, the $100,000 Oregon Mutual UIM limit is excess over the $25,000 collectible under the Reinhardt policy's UIM provision, but that does

---

usage unless there is some indication a special meaning is intended"); *Huyett v. Idaho State University*, 104 P.3d 946, 951 (Idaho 2004) (using Webster's Dictionary to define a contract term).

[6] Although the Reinhardt policy provided for $50,000 of UIM coverage, for which Devon Austin qualified, that policy also required that any payment by Viking on the UIM coverage would be reduced by any payments made by the owner or operator of the underinsured vehicle. Laughlin's vehicle was underinsured and his policy paid its $25,000 liability limits to the Austins, reducing any amount collectible by Austin under the Reinhardt UIM provision to $25,000.

not mean it is excess *over any other types of insurance* (whether collected or collectible), such as the $5,000 for medical payments under the Austins' Oregon Mutual policy. Taking the $25,000 UIM insurance collectible from Viking, and adding the excess Oregon Mutual UIM coverage of $100,000, results in $125,000 of collectible UIM insurance from both policies. However, that amount is still subject to reduction for the $75,000 already paid out by the Reinhardt and Laughlin policies as well as the $5,000 paid by Oregon Mutual for the medical payment coverage because these payments were not made pursuant to other collectible UIM coverage and, therefore, there is no exception to the Limits of Liability reductions under the UIM endorsement.

Although the Court recognizes that this result is not one urged by either party, and interpreting other collectible insurance as other collectible UIM coverage may make calculating the amount of total recovery more complicated, it is not impossible, and it is accomplished by following the plain and unambiguous terms Oregon Mutual chose to employ in its insurance policy.

**D.     Public Policy Does Not Void Any of The Terms in The Oregon Mutual Policy**

The Austins argue that the "Limits of Liability" provision in the Oregon Mutual policy violations public policy. Pl.'s Mem., pp. 13-16. In sum, they argue that, as a matter of public policy, insurance companies should not be allowed to offset UIM coverage with amounts recovered from tortfeasors. They also assert that the UIM endorsement, as written, requires them to make an election of what type of insurance provision to proceed under in settling claims (i.e., bodily injury or UIM). However, under the "Other Insurance" provision as applied here, the Austins still get credit for the full amount of UIM coverage potentially available to them (the amount "collectible"), even if they do not actually collect any UIM coverage from the tortfeasor. What they cannot do is avoid having the insurer receive credit for the full amount of a tortfeasor's payments of other insurance available under that person's policy (without some sort of applicable exception like the one that applies in the Oregon Mutual case when the insured is injured in a vehicle she does not own).

The case on which the Austins rely for their public policy argument, *Hill v. American Family Mutual Insurance Company*, allows for offsets to an insured's recovery for what the insured may or could have recovered as the policy limit under the tortfeasor's policy. 249 P.3d 812 (Idaho 2011). The Idaho Supreme Court in *Hill*

**Order on Motions for Summary Judgment - 15**

explained its holding and then noted that a credit for the full amount of a tortfeasor's policy is still available to insurers:

> [W]e now hold exhaustion clauses in UIM automobile policies to be void, unenforceable, and severable in Idaho. To collect against his or her insurer, a UIM insured may proceed against the UIM carrier, who must investigate and attempt to resolve the claim in good faith regardless of whether the insured settled with the tortfeasor's insurer or, if so, for how much. *Taylor*, 978 P.2d at 751. *The UIM carrier will receive credit for the full amount of the tortfeasor's policy, regardless of the insured's actual recovery*.

*Hill*, 249 P.3d at 820–21 (emphasis added). The Court also noted that "requiring the insured to exhaust all the insurance applicable to all vehicles in an accident "would emasculate the endorsement's intended effect . . . to provide coverage over and above the limits of the tortfeasor's insurance." *Hill v. Am. Family Mut. Ins. Co.*, 249 P.3d 812, 819 (Idaho 2011) (quoting *Colonial Penn. Ins. Co. v. Salti*, 84 A.D.2d 350 (N.Y. App. Div. 1982) (internal quotation marks omitted)). Although the intent of UIM coverage is to provide coverage above the tortfeasor's limit if that tortfeasor carries only the minimum amount of insurance required by law, and the injuries caused by the accident result in damages higher than the tortfeasor's policy limits, that is not a guarantee that the coverage should go above all limits, including the one an insured agrees to with his insurance company as the maximum limit of recovery for his policy—something over which the insured has control. The court in *Hill* also noted that its decision on the

exhaustion issue would not result in Hill receiving "a better deal than she bargained for if she can show that an underinsured tortfeasor is liable to her for an amount exceeding his policy limits and then sets off those policy limits against her UIM recovery." 249 P.3d at 821. Thus, the court contemplated that offsets for recoveries from tortfeasors are appropriate, but an insurance company cannot insist that insured fully recover all of the liability limits available under all possible insurance policies covering an accident before seeking contribution from her own insurance policy.

E.  **Conclusion & Order**

For the reasons explained above, Plaintiffs' Motion for Summary Judgment (Dkt. 27) is GRANTED, in part, and DENIED, in part. Plaintiffs are entitled to recover a total of $45,000 in UIM coverage under their Oregon Mutual policy. Because Oregon Mutual has already paid $20,000 to Plaintiffs, the total due under the judgment to be issued in this case will be $25,000.

Defendant's Motion for Summary Judgment (Dkt. 20) is DENIED.

The Court will enter a separate declaratory judgment setting forth the rights and responsibilities of the parties under the Oregon Mutual policy.  This case is CLOSED.

**IT IS SO ORDERED.**



DATED:  **March 31, 2014**.

Honorable Ronald E. Bush
U. S. Magistrate Judge